UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHLEEN MARIE WALDVOGEL,

                          Plaintiff,

v.                                                    6:16-CV-0868
                                                      (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LEGAL AID SOCIETY OF                                  MICHAEL J. TELFER, ESQ.
NORTHEAST NEW YORK - ALBANY
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY  12206

U.S. SOCIAL SECURITY ADMIN.                           JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Kathleen Marie

Waldvogel ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for

judgment on the pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos.

11, 12.)  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is

granted, and Defendant's motion for judgment on the pleadings is denied.

I.      RELEVANT BACKGROUND

A.      Factual Background

Plaintiff was born in 1966, making her 48 years old at the alleged onset date and 49 years

old at the date of the ALJ's decision.  Plaintiff reported completing the 11th grade.  Plaintiff has

past work as a machine operator and store laborer/stocker.  Generally, Plaintiff alleges disability

due to diabetes, thyroid disease, degenerative disc disease, depression, anxiety, high blood

pressure, arthritis in the knees, migraines, and high cholesterol.

B.      Procedural History

Plaintiff applied for Disability Insurance Benefits on January 13, 2015, and Supplemental

Security Income on November 17, 2014, alleging disability beginning May 27, 2014.  Plaintiff's

applications were initially denied on May 14, 2015, after which she timely requested a hearing

before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ John

G. Farrell on December 16, 2015.  On February 12, 2016, the ALJ issued a written decision

finding Plaintiff was not disabled under the Social Security Act.  (T. 15-32.)[1]  On May 20, 2016,

the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner.  (T. 1-3.)

C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and

conclusions of law.  (T. 15-31.)  First, the ALJ found that Plaintiff is insured for disability

benefits under Title II until December 31, 2018.  (T. 15.)  Second, the ALJ found that Plaintiff

---

[1]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

has not engaged in substantial gainful activity since the alleged onset date.  (*Id.*)  Third, the ALJ found that Plaintiff's degenerative disc disease at L4-L5 with degenerative spondylosis, degenerative joint disease of the knees, right plantar fascial fibromatosis, diabetes mellitus, peripheral neuropathy in the bilateral lower extremities, right shoulder bursitis, right hip bursitis, obesity, bilateral hearing loss, migraines, major depressive disorder with recurrent episodes, social anxiety disorder, panic disorder with agoraphobia, and generalized anxiety disorder are severe impairments, while hypothyroidism, high blood pressure, high cholesterol, and carpal tunnel syndrome are not severe impairments.  (*Id.*)  Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 18-20.)  More specifically, the ALJ considered Listing 1.00 (musculoskeletal system), 2.00 (special senses and speech), 9.00 (endocrine disorders), 11.00 (neurological disorders), 12.00 (mental disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders).  (*Id.*)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can occasionally perform all posturals; avoid walking on irregular surfaces; can frequently perform bilateral fingering and feeling; avoid concentrated exposure to hazardous machinery and unprotected heights; no work requiring bilateral hearing acuity; no work in loud environments; can perform simple routine tasks with occasional interactions with the public and coworkers; and no production-paced work.

(T. 20.)  Sixth, the ALJ found that Plaintiff is unable to perform her past relevant work with the above limitations.  (T. 30.)  Seventh, and finally, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy as a tube operator and addressing clerk, and therefore she is not disabled.  (T. 31.)

**D.     The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff makes four arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in failing to find carpal tunnel syndrome to be a severe impairment.  (Dkt. No. 11, at 10-12 [Pl. Mem. of Law].)

Second, Plaintiff argues that the RFC determination is legally erroneous.  (Dkt. No. 11, at 12-13 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that the ALJ erred in affording only little weight to the opinion from treating physician Dr. Cummings, and in affording significant weight to the opinion from consultative examiner Dr. Prezio.  (Dkt. No. 11, at 13-20 [Pl. Mem. of Law].)

Third, Plaintiff argues that the credibility determination is legally erroneous because the reasons provided for that finding are not valid or supported by the evidence. (Dkt. No. 11, at 20-22 [Pl. Mem. of Law].)

Fourth, and finally, Plaintiff argues that the Step Five finding is legally erroneous based on the errors the ALJ made in assessing severity, the RFC, and credibility, which resulted in an incomplete hypothetical question to the vocational expert.  (Dkt. No. 11, at 22-23 [Pl. Mem. of Law].)  Plaintiff also argues that the ALJ erred in failing to account for Plaintiff's borderline age situation when applying the Medical-Vocational Guidelines.  (Dkt. No. 11, at 23-24 [Pl. Mem. of Law].)  Plaintiff additionally argues that the ALJ failed to show that there were jobs existing in significant numbers in the national economy that Plaintiff remained able to perform.  (Dkt. No. 11, at 24-25 [Pl. Mem. of Law].)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that substantial evidence supports the Step Two finding related to Plaintiff's carpal tunnel syndrome.  (Dkt. No. 12, at 6-9 [Def. Mem. of Law].)

Second, Defendant argues that the RFC finding is supported by substantial evidence because the ALJ appropriately weighed the opinions from Dr. Cummings and Dr. Prezio. (Dkt. No. 12, at 9-14 [Def. Mem. of Law].)

Third, Defendant argues that the Step Five finding was supported by substantial evidence because the jobs provided showed the existence of significant numbers in the national economy. (Dkt. No. 12, at 13-14 [Def. Mem. of Law].)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed

impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ's Step Two Finding Related to Carpal Tunnel Syndrome Was Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 6-9 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

At Step Two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated

for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32

F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v.*

*Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of

presenting evidence to establish severity.  *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r*

*of Soc. Sec.*, No. 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has also indicated that the failure to find a specific impairment severe at Step

Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ

continues with the sequential evaluation, and the ALJ provides explanation showing he

adequately considered the evidence related to the impairment that is ultimately found non-severe.

*Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, No.

09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation

adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523

F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and

panic disorder severe at Step Two would be harmless because the ALJ found other severe

impairments present, continued through the sequential evaluation process, and specifically

considered plaintiff's anxiety and panic attacks at those subsequent steps).

Plaintiff argues that the ALJ's finding that carpal tunnel syndrome was not a severe

impairment is erroneous because this impairment met the 12-month duration requirement

outlined in the regulations, and because the evidence in the record shows that it significantly

limited her ability to perform basic work activities.  (Dkt. No. 11, at 10-12 [Pl. Mem. of Law].)

In finding this impairment non-severe, the ALJ noted that, "[d]espite early evidence of bilateral

carpal tunnel syndrome, the claimant did not seek any treatment until several years later, and

although she ultimately underwent surgical intervention, which helped her condition, there is no

evidence to support a finding that this condition had lasted for a continuous period of not less than 12-months."  (T. 17-18.)

This Court has recognized that, in conducting the Step Two analysis, the issues of severity and duration "have been found to be separate questions that require separate analyses." *Melia v. Colvin*, No. 1:14-CV-0226, 2015 WL 4041742, at *7 (N.D.N.Y. July 1, 2015) (citing *Gray v. Astrue*, No. 04-CV-3736, 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009)).  "'Courts within this circuit have discerned errors when *statutory* disability-duration analysis is conflated with *regulatory* impairment-severity analysis.  Reasoning that an impairment's severity is analytically distinct from its chronological duration, they find legal error when the only basis for a Step [Two] non-severity finding is insufficient duration.'"  *See Melia*, 2015 WL 4041742, at *7 (quoting *Snedeker v. Colvin*, No. 3:13-CV-0970, 2015 WL 1126598, at *4 (N.D.N.Y. Mar. 12, 2015) (emphasis in original); citing *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006)).

As noted above, the ALJ explicitly found that carpal tunnel syndrome was not severe based on his conclusion that this impairment did not meet the 12-month duration requirement. (T. 17-18.)  Such rationale is facially inconsistent with the requirement to consider the issues of duration and severity separately.  *See Melia*, 2015 WL 4041742, at *7.  Although the ALJ discussed in some detail the medical evidence related to carpal tunnel syndrome, he did not explicitly state that he found this impairment non-severe based on a conclusion that it failed to impose a significant limitation on Plaintiff's ability to perform basic work activities. By contrast, when discussing other impairments found non-severe, the ALJ did specify that he reached that conclusion because those other impairments did not "cause any significant limitation of physical or mental ability to perform basic work activities."  (T. 18.)  Based on the ALJ's clear statement

that he found carpal tunnel syndrome was non-severe due to a lack of evidence that it met the durational requirement and his statements regarding the other non-severe impairments, this Court cannot reasonably conclude that the ALJ intended to also imply a reason for finding carpal tunnel syndrome non-severe other than the duration requirement. Consequently, the ALJ's Step Two analysis of carpal tunnel syndrome was erroneous. *See Melia*, 2015 WL 4041742, at *7.

However, the finding of a legal error does not end the analysis in this case. Rather, it must still be determined whether this error was harmless. *See Thompson v. Comm'r of Soc. Sec.*, No. 7:10-CV-1085, 2011 WL 5080239, at *13 (N.D.N.Y. Aug. 18, 2011) (noting that the harmless error standard is applied to Social Security actions in appropriate circumstances) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Jones v. Barnhart*, No. 02-CV-0791, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003); *Seltzer v. Comm'r of Soc. Sec.*, No. 07-CV-0235, 2007 WL 4561120, at *10 (S.D.N.Y. Sept. 26, 1995)). Particularly, as already noted above, the Second Circuit has concluded that an error in finding an impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo*, 948 F. Supp. 2d at 269-70.

Contrary to Plaintiff's argument that a finding of non-severity removes the impairment in question from further consideration, SSR 96-8p explicitly requires the ALJ to consider both severe and non-severe impairments when assessing the RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Here, the ALJ found multiple other impairments severe and continued with the sequential evaluation. (T. 15, 18-31.) The ALJ also included a discussion of the treatment evidence related to carpal tunnel syndrome in the written decision. (T. 16-17.) Additionally, the

ALJ included limitations for frequent bilateral fingering and feeling in the RFC assessment in an effort to account for the effects of carpal tunnel syndrome shown in the record. (T. 20.) It is therefore clear from the ALJ's decision that he considered the evidence related to carpal tunnel syndrome, both at Step Two and when assessing the RFC, regardless of his conclusion that it was not a severe impairment.

Plaintiff argues that she would have been limited to only occasional handling, fingering, and feeling bilaterally had the ALJ found carpal tunnel syndrome to be a severe impairment, but this Court does not agree. Rather, substantial evidence supports the ALJ's finding for an ability to frequently finger and feel. On December 29, 2010, treating physician Dr. Cummings noted that an EMG study had shown evidence of carpal tunnel syndrome and nerve entrapment, but on examination, Plaintiff did not display any abnormality where she reported pain in her arms, even with palpation, and she was noted to appear very comfortable. (T. 853.) Her next treatment for this impairment was on February 24, 2015, when she reported a pins-and-needles sensation that had recently worsened when doing needlepoint, though she indicated she did not have pain in her hands. (T. 380.) Dr. Cummings observed equal wrist pulses bilaterally, no muscle wasting, normal grip strength, and grossly intact sensation, though she did display a positive Phalen's sign in her wrists indicative of carpal tunnel syndrome. (*Id.*) On April 29, 2015, consultative examiner Dr. Prezio observed Plaintiff had 4.5/5 strength in her upper and lower extremities, intact hand and finger dexterity, full grip strength, and minimal percussion tenderness over the carpal ligament in her left arm; he concluded she had only mild restrictions for fine and gross manipulation. (T. 474-75.) On July 8, 2015, Plaintiff reported burning and tingling sensations in her hands that was not relieved with splinting. (T. 669.) Treating physician Dr. Cecil observed positive Tinel's and Phalen's signs in both hands, slight hypestesia of the radial three fingers,

and full range of motion in her fingers.  (T. 669, 831.)   On August 24, 2015, Physician Assistant Tolge noted the same symptoms as on Dr. Cecil's previous examination.  (T. 816.)  On October 13, 2015, Dr. Cecil observed tenderness over the volar aspect of both wrists with positive Tinel's sign over the carpal tunnels and diminished sensation in the first three fingers of the right hand. (T. 813.)  Plaintiff underwent bilateral carpal tunnel release surgery on November 23, 2015.  (T. 806-07.)  On December 8, 2015, after performing some lifting at home despite being in the process of healing from surgery, Plaintiff was observed to have mild wrist swelling, slight tenderness, and slightly diminished sensation to the first three fingers of the left hand.  (T. 801.) Dr. Cecil reassured her that it was simply going to take time to heal from the surgery and she declined a prescription for occupational therapy.  (T. 801-02.)

The ALJ was correct in noting that although Plaintiff had been diagnosed with carpal tunnel syndrome in 2010, she did not begin displaying symptoms to providers indicative of any actual limitations from that impairment until mid-2015.  Additionally, the observations of positive Tinel's and Phalen's signs and diminished sensation in three fingers do not overtly contradict the ALJ's finding that Plaintiff remained capable of using her hands frequently for fingering and feeling.  Although Plaintiff cites to the manipulative limitations opined by Dr. Cummings as evidence contradicting the ALJ's findings, the ALJ properly rejected that opinion, as will be discussed in greater detail in section III.B. of this Decision and Order.  Because the ALJ considered carpal tunnel syndrome at the later steps of the sequential evaluation and the evidence does not show that greater limitations were warranted as a result of that impairment, any error in finding carpal tunnel syndrome to be non-severe is harmless.  *Fuimo*, 948 F. Supp. 2d at 269-70; *Johnson*, 817 F.2d at 986.

Based on the above, the ALJ's failure to find carpal tunnel syndrome to be a severe impairment at Step Two was at most harmless error that did not affect the outcome of the decision. Remand is therefore not warranted on this basis.

B.  **Whether the ALJ Appropriately Weighed the Opinion Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 9-13 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors,

13

"the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### 1.    Dr. Cummings' Opinions

Plaintiff raises a number of objections to the ALJ's rejection of Dr. Cummings' opinions, including asserting that these opinions are supported by the evidence, that the ALJ's reasons for that rejection were "not the type of comprehensive reasoning necessary to explain why a treating physician's opinion was not given controlling weight," and that the ALJ erred in requiring a durational statement from Dr. Cummings while ignoring the lack of a durational statement from the consultative examiner, or alternatively in failing to recontact Dr. Cummings for a durational clarification prior to using this as a grounds for rejecting his opinions. (Dkt. No. 11, at 14-19 [Pl. Mem. of Law].)

Dr. Cummings provided multiple statements related to Plaintiff's ability to work. On September 24, 2014, he indicated in a treatment note that, "[g]iven her mental state I do not feel she would able to be [an] []effective employee." (T. 371.) On June 18, 2015, Dr. Cummings stated in a treatment note that, "[g]iven her multiple medical and mental health issues coupled with chronic pain from poorly controlled diabetes it is unlikely that she will be able to return to the workforce," and noted that the need to take Xanax for anxiety control and the side effects of

hydrocodone would also "significantly limit her employability." (T. 735.) On November 2, 2015, Dr. Cummings opined Plaintiff could, in an eight-hour workday, sit four hours total, stand one hour total, walk one hour total, frequently lift or carry ten pounds, frequently reach and use foot pedals, occasionally grasp, push, pull and perform fine manipulation, frequently reach above shoulder level, occasionally bend, stoop, squat, kneel and crawl, and never work around heights. (T. 722-23.) Dr. Cummings noted that Plaintiff suffered from diabetic neuropathy, which he indicated would likely worsen over time and would be present regardless of whether she was sitting, standing, or lying down. (T. 723.)

The ALJ afforded Dr. Cummings' opinions limited weight, finding that they were conclusory, did not indicate a duration lasting 12 months, were not consistent with the overall medical evidence in the record, and were not consistent with his own treatment notes that showed very little explanation or support from clinical and laboratory findings. (T. 29.)

Plaintiff argues that the ALJ's finding that Dr. Cummings' opinions were not consistent with the evidence as a whole was a conclusory statement that was not sufficient to constitute a good reason for rejecting that opinion, citing to *Flagg v. Astrue*, No. 5:11-CV-00458, 2012 WL 3886202, at *11 (N.D.N.Y. Sept. 6, 2012). (Dkt. No. 11, at 18 [Pl. Mem. of Law].) However, Plaintiff's reliance on the language in *Flagg* ignores a key part of this Court's statement in that case, namely that a conclusory statement that an "opinion is inconsistent with the evidence, *without more*," would not constitute a reason satisfying the regulations. *Flagg*, 2012 WL 3886202, at *11 (emphasis added). Here, there is "more," in the form of the ALJ's detailed and lengthy discussion of the treatment evidence. (T. 22-29.) This discussion shows exactly what evidence the ALJ relied on when concluding Dr. Cummings' opinion was inconsistent with the overall record. There is no requirement that the ALJ re-list all of this evidence in the section of

the decision where he specifically discussed Dr. Cummings' opinion, and this Court can make the logical connection between the evidence discussed throughout the decision and the ALJ's conclusion regarding Dr. Cummings' opinions.  Plaintiff's assertions that the ALJ's reliance on inconsistency with the evidence was too conclusory or vague to allow meaningful review are therefore not persuasive in light of the ALJ's thorough discussion of the evidence.

Plaintiff also argues more generally that "Dr. Cummings' opinions are supported by substantial evidence of record and his 'around five' year treatment history of [Plaintiff] as her treating physician."  (Dkt. No. 11, at 14-18 [Pl. Mem. of Law].)  However, this argument amounts to little more than a request for this Court to re-weigh the evidence, something it is not permitted to do under the limited scope of review.  *See Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), Report and Recommendations adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*,

705 F.2d 638, 642 (2d Cir. 1983)). As noted previously, the ALJ's decision contains a thorough discussion of the treatment evidence, including Dr. Prezio's examination and opinion (to which the ALJ afforded significant weight), that indicates the existence of substantial evidence to support his finding that Dr. Cummings' opinions were not consistent with the evidence in the record as a whole.

Regarding Plaintiff's argument pertaining to the ALJ's notation that Dr. Cummings' opinion did not contain an indication that the limitations he opined had or would be expected to last for 12 months, Plaintiff ignores the context of that statement within the record. (Dkt. No. 11, at 18-19 [Pl. Mem. of Law].) Although not explicitly stated, this reason for declining to rely on Dr. Cummings' opinion appears to be primarily related to the opined manipulative limitations specifically when it is considered in conjunction with the ALJ's statements at the hearing. (T. 29, 105.) At the hearing on December 16, 2015, the ALJ expressed skepticism for a limitation for occasional handling and fingering because Dr. Cummings' opinion was rendered a month prior to the hearing and the ALJ did not see evidence which would have established that such significant manipulative limitations existed prior to the time of that opinion. (T. 104-05.) Plaintiff's representative noted that Plaintiff had testified her carpal tunnel syndrome was "bothering her quite a bit before she had the surgery," and the ALJ suggested she could try and get a statement from Dr. Cummings corroborating Plaintiff's allegations that her symptoms existed at such a level well before her surgery, to which Plaintiff's representative answered, "I could try." (T. 105.) The ALJ noted he would hold the record open in case the representative was able to obtain such a statement. (*Id*.) This discussion at the hearing shows that the ALJ was concerned in particular about how long the manipulative limitations opined in Dr. Cummings' opinion could reasonably be said to have been present, a fact that is very relevant for determining

17

whether the lack of a durational statement in Dr. Cummings' opinion was a pertinent factor to consider.

Plaintiff argues that the ALJ should have recontacted Dr. Cummings for clarification of the duration of the opinion. However, Plaintiff's argument fails for two reasons. First, as discussed above, the ALJ provided Plaintiff's representative with the opportunity to seek just such a clarification after the ALJ expressed his concerns and it does not appear that Plaintiff's attorney obtained anything. (T. 105.) While the ALJ does have a concurrent duty to assist in developing the record, that does not relieve Plaintiff of her duty to provide evidence in support of her claim. The fact that Plaintiff declined to take that opportunity to provide the ALJ with additional evidence does not show that the ALJ was required to seek out that evidence himself. Second, there was no requirement to recontact Dr. Cummings for clarification because the ALJ had sufficient evidence to make a reasonable determination on the issue. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *see also Janes v. Colvin*, No. 6:15-CV-1518, 2017 WL 972110, at *3 (N.D.N.Y. Mar. 10, 2017) ("the ALJ need not seek additional information from a given provider when the record contains notes from the provider that are adequate for the ALJ to determine the claimant's disability."). As already discussed previously, the treatment evidence related particularly to carpal tunnel syndrome showed very few overt abnormalities that would impact work-related functioning, and worsening symptoms were only documented beginning in

July 2015, about five months prior to the carpal tunnel surgery in November 2015.[2]  (T. 669, 806-07, 831.)  Plaintiff has not shown how the evidence available to the ALJ was insufficient or contained gaps which would prevent him from concluding that carpal tunnel syndrome did not impose such significant limitations for an extended period of time such as to give rise to a duty to recontact Dr. Cummings.  *See Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (finding no obligation to re-contact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination") (citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996)); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008) (nothing that,"[i]n furtherance of the duty to develop the record, an ALJ *may* re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to permit a reasoned disability determination and additional information is needed to resolve the question," suggesting the duty to recontact a treating physician is also more discretionary than strictly mandatory) (emphasis added) (citing 20 C.F.R. § 404.1512(e)).  Additionally, Plaintiff's carpal tunnel surgery was performed after Dr. Cummings rendered his opinion, which adds to the ALJ's concerns that Dr. Cummings' opinion did not describe manipulative symptoms which were indicative of her functioning for a period of at least 12 months.  (T. 806-07.)  Given that Plaintiff now argues that the ALJ should have accepted these manipulative limitations (which according to the vocational expert's testimony would have resulted in a finding of disability), the issue of

---

[2]      Notably, Plaintiff was initially scheduled to have the carpal tunnel surgery in August 2015, but was unable to undergo the procedure at that time due to uncontrolled diabetes causing extremely high blood glucose levels.  (T. 546, 738.)  Dr. Cummings advised her of the need to make a better effort to control her blood glucose levels in order to have the surgery, something which suggests Plaintiff's own poor dietary and medication compliance choices contributed to her lack of blood glucose control, which then prevented her from getting the carpal tunnel surgery to relieve her symptoms sooner.  (T. 738-39.)

whether Dr. Cummings' opinion was meant to describe a period satisfying the duration to establish disability under the regulations is in fact a very important consideration. However, this did not give rise to a duty to recontact because the evidence already in the record was sufficient to show that the extent of the opined manipulative limitations was not supported. Consequently, Plaintiff's arguments that the ALJ should have recontacted Dr. Cummings and that he applied a "double standard" in considering the lack of a durational statement in Dr. Cummings opinion while relying on consultative examiner opinions that did not contain a durational statement are unpersuasive based on the full context of the evidence and issues in this case.

For all the above reasons, the ALJ provided good reasons supported by substantial evidence for affording limited weight to Dr. Cummings' opinions. Remand is therefore not merited on this basis.

### 2. Dr. Prezio's Opinion

Plaintiff argues that the ALJ also erred in relying on the opinion from consultative examiner Dr. Prezio because the use of words like "mild" and "moderate" were not specific enough to constitute substantial evidence. (Dkt. No. 11, at 19-20 [Pl. Mem. of Law].) On April 29, 2015, Dr. Prezio observed Plaintiff was in no acute distress with a normal gait, could not walk or stand on her heels and toes due to left knee pain, could only squat 30 degrees due to back and knee pain, had a minimally wide-based stance, needed no help changing or getting out of a chair and minimal help getting up from the exam table, had decreased lumbar flexion, negative straight leg raising, poor abduction in the right shoulder, slightly diminished ankle range of motion with tenderness to palpation, diminished sensation from the mid-calf to the foot bilaterally, 4.5/5 muscle strength in the upper and lower extremities, intact hand and finger dexterity, full grip strength, and minimal percussion tenderness over the left carpal ligament. (T.

473-74.) Dr. Prezio opined that Plaintiff had moderate limitations in prolonged standing, walking, squatting, kneeling, bending, heavy lifting, and carrying objects of any significant weight, mild restrictions with fine and gross manipulation, particularly on the left, and the need to be cautious with heights, ladders, and stairs without appropriate guardrails. (T. 475.) The ALJ afforded Dr. Prezio's opinion significant weight because he was an examining physician and his finding were consistent with the other medical evidence in the record.

This Court has previously noted that facially vague terminology in a consultative examiner's opinion "does not render the consultative examiner's opinion useless in all situations" so long as it is "well supported by his extensive examination" or can be made "more concrete" by "the facts in the underlying opinion and other opinion evidence in the record." *Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235, 2016 WL 7971330, at *7-8 (N.D.N.Y. Dec. 29, 2016), Report and Recommendation adopted by 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) (citing *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014); *Waldau v. Astrue*, No. 5:11-CV-0925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003)).

In asserting that Dr. Prezio's opinion was too vague due to his use of the terms "mild" and "moderate," Plaintiff ignores the fact that this opinion does not exist in a vacuum. Rather, it was rendered with the benefit of a description of Plaintiff's reported symptoms and a contemporaneous examination, both of which provide context as to how those modifiers should be interpreted. With Dr. Prezio's detailed examination as a guide for interpretation, his opinion is far from being too vague to be useless, and the examination and opinion together certainly suggest that Plaintiff would be capable of performing the range of sedentary work with additional limitations as outlined in the RFC assessment. As the ALJ's interpretation of Dr.

Prezio's opinion are reasonable when considered with the examination findings and the other evidence in the record, this Court cannot say that a different conclusion was warranted. *See Hart v. Astrue,* 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue,* 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld."); *Campbell v. Astrue*, 713 F. Supp. 2d 129, 132 (N.D.N.Y. 2010) ("Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing *Rutherford*, 65 F.2d at 62); *Perkins v. Astrue*, 32 F. Supp. 3d 334, 337 (N.D.N.Y. 2012); *Swan v. Comm'r of Soc. Sec.*, No. 7:14-CV-0773, 2015 WL 5512686, at *3 (N.D.N.Y. Sept. 15, 2015). Dr. Prezio's opinion was therefore not too vague to provide substantial evidence to support the ALJ's findings and the ALJ did not commit legal error in relying on it.

For all of the above reasons, the ALJ did not err in affording significant weight to Dr. Prezio's opinion. Remand is therefore not merited on this basis.

### C. Whether the Credibility Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons that follow.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported

by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012)

(quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit

recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and

that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the

court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"

*Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705

F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588,

591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a

claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is

generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012)

(citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

 Plaintiff argues that the credibility determination is erroneous because the objective

evidence supported her alleged symptoms, the ALJ should not have relied on Plaintiff's ability to

perform basic life activities, the ALJ should not have relied on an isolated statement suggesting

Plaintiff exaggerated her pain during the consultative examination, and the ALJ should not have

relied on inconsistencies in reports of special education participation without first obtaining her

education records.  (Dkt. No. 11, at 20-22 [Pl. Mem. of Law].)

 The decision shows that the ALJ provided a number of reasons for the adverse credibility

determination, including findings that her allegations could not be corroborated by objective

medical evidence, her reported activities of daily living were inconsistent with allegations of

total disability, she provided inconsistent information as to her participation in special education

and why she stopped working, there was some evidence of symptom exaggeration, there was

evidence of medication and treatment non-compliance, there was evidence of improvement with proper treatment, and she sought mental health treatment only infrequently.  (T. 21-30.)

Plaintiff's arguments that remand is merited due to errors in the credibility assessment are not persuasive.  As already discussed, this Court has found that substantial evidence does support the ALJ's analysis of the evidence and conclusion that Plaintiff remains able to perform a range of sedentary work, and will not reweigh evidence in order to reach a different conclusion regarding whether the objective evidence is inconsistent with Plaintiff's allegations. Additionally, contrary to Plaintiff's objections, the ALJ appropriately considered and relied on Plaintiff's reported daily activities pursuant to the regulations.  *See* 20 C.F.R. §§404.1529, 416.929.  The ALJ's discussion makes clear that he did not improperly require Plaintiff to show complete invalidity, but rather that he assessed the evidence and determined her activities were not inconsistent with an ability to perform sedentary work.  The ALJ noted that Plaintiff was able to prepare meals, wash dishes, sweep, dust, mop, attend doctor's appointments, go to her daughter's house, leave the house by walking, riding in a car or taking public transportation, occasionally shop, socialize with family members, count change and handle money, and was able to interact with people in small groups.  (T. 21.)  The ALJ also noted activities Plaintiff reported difficulty with, including doing laundry, getting out of the tub, travelling alone due to diabetes spikes, being around large groups of people, lifting heavy objects, sitting, standing or walking for prolonged periods, kneeling, and squatting.  (*Id*.)  At the examination with Dr. Prezio, Plaintiff reported she did very little cooking, cleaning, laundry, or shopping, but she showered five days a week and dressed daily.  (T. 472.)  At the examination the same day with consultative examiner Dr. Bowman, Plaintiff reported she was able to dress, bathe and groom herself, cook and prepare food, engage in general cleaning and laundry, shop, manage money, and take medical

transportation, though she did have help from her children for household activities. (T. 480.) She reported she did not socialize, that she had no hobbies other than television, and that she did not engage in any strenuous activity because "she will get hot, sweat, and get aggravated." (T. 481.) The ALJ interpreted the evidence of Plaintiff's daily activities as being inconsistent with Plaintiff's allegations of an inability to perform even sedentary work, and, as that interpretation is reasonable, this Court must accept it. *See Hart,* 32 F. Supp. 3d at 235; *Brouillette,* 901 F. Supp. 2d at 333; *Campbell*, 713 F. Supp. 2d at 132.

The evidence also supports the ALJ's conclusion that Plaintiff had a history of medication non-compliance that impeded the improvement of her conditions. This is most apparent in relation to Plaintiff's diabetes. The record contains multiple notations and suggestions that Plaintiff was non-compliant with prescribed diet and medications, which led to uncontrolled diabetes that caused worsening peripheral neuropathy and even prevented her from undergoing carpal tunnel surgery at the time she was initially scheduled to do so; she was noted to have better blood glucose levels leading up to her surgery when she was more compliant with treatment. (T. 546, 587, 649, 727, 731, 738.)

Whether or not some of the ALJ's reasons for the credibility finding are unsupported or erroneous, any such errors would be harmless since the ALJ provided other proper reasons that are supported by substantial evidence for that finding. *See Schlichting*, 11 F. Supp. 3d at 206-07 (finding harmless error in the ALJ's adverse inference of a failure to pursue treatment where the credibility analysis as a whole was supported by substantial evidence); see also *Taylor v. Colvin*, No. 3:14-CV-0928, 2016 WL 1049000, at *8-9 (N.D.N.Y. Mar. 11, 2016) (noting that the ALJ's failure to inquire into the reasons for gaps in mental health treatment prior to using those gaps against the plaintiff's credibility was harmless where the ALJ provided other reasons supported

by substantial evidence to support the overall credibility determination). Consequently, because the ALJ has provided multiple reasons supported by substantial evidence, the credibility assessment must be upheld and remand is not warranted on this basis.

### D. Whether the Step Five Finding is Consistent With Applicable Legal Standards and Supported By Substantial Evidence

After careful consideration, the Court answers this question in the negative for the reasons that follow.

Plaintiff makes multiple arguments within her general challenge to the Step Five finding. (Dkt. No. 11, at 22-25 [Pl. Mem. of Law].) Each of these will be discussed in turn.

First, Plaintiff argues that the Step Five finding is erroneous based on the errors she alleges the ALJ committed in the previous steps of the sequential evaluation, all of which she asserts resulted in the ALJ relying on vocational expert testimony elicited in response to an incomplete hypothetical question. (Dkt. No. 11, at 22-23 [Pl. Mem. of Law].) The Second Circuit recognizes that "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). Plaintiff's first challenge to the Step Five finding fails because, as already detailed previously, this Court finds that the ALJ did not commit harmful errors in assessing severity, weighing the opinion evidence, or assessing RFC or credibility, and Plaintiff has not shown any other independent basis for additional limitations that

were erroneously omitted from the hypothetical question that elicited the vocational expert

testimony on which the ALJ relied.

Second, Plaintiff argues the ALJ erred in mechanically applying the Medical-Vocational

Guidelines rather than considering her borderline age situation. (Dkt. No. 11, at 23-24 [Pl. Mem.

of Law].) "The Regulations direct that the age category that applies to a plaintiff during the

period for which she claims disability be used to determine whether or not plaintiff is disabled."

*Pennock v. Comm'r of Soc. Sec.*, No. 7:14-CV-1524, 2016 WL 1128126, at *10 (N.D.N.Y. Feb.

23, 2016), Report and Recommendation adopted by 2016 WL 1122065 (N.D.N.Y. Mar. 22,

2016) (citing 20 C.F.R. §§ 404.1563(b); 416.963(b)). "The Regulations make clear, however,

that the age categories are not to be applied 'mechanically in a borderline situation,'" such as

where a claimant is "within a few days or months of obtaining an older age category 'and using

the older age category would result in a determination or decision that [the plaintiff] [is]

disabled.'" *Pennock*, 2016 WL 1128126, at *10 (citing 20 C.F.R. §§ 404.1563(b); 416.963(b)).

Courts within the Second Circuit have concluded that three months constitutes the outer limits of

"a few months" for the purposes of borderline age. *See Pennock*, 2016 WL 1128126, at *11

(collecting cases regarding periods of time that were found to be borderline or not). In

evaluating whether to apply the older age category, the Agency considers "the overall impact of

all the factors in your case." 20 C.F.R. §§ 404.1563(b), 416.963(b).

Although this Court has not addressed the ramifications of an ALJ's failure to analyze the

application of borderline age considerations in appropriate circumstances, the Western District of

New York has recently ruled on this issue, finding that "[i]f a claimant's age is 'borderline' and

the ALJ fails to consider whether the higher age category should be used, remand is warranted so

long as a higher age category would entitle the claimant to benefits." *Woods v. Colvin*, 218 F.

Supp. 3d 204, 207 (W.D.N.Y. 2016); *see also Koszuta v. Colvin*, No. 14-CV-0694, 2016 WL 824445, at \*2 (W.D.N.Y. Mar. 3, 2016) (finding remand appropriate where the ALJ failed to consider the borderline age situation, which would have required him to consider and make additional findings on issues such as transferability of work skills in order to determine whether Plaintiff was disabled); *Jerome v. Astrue*, No. 2:08-CV-0098, 2009 WL 3757012, at \*13 (D. Vt. Nov. 6, 2009) (finding the ALJ's mechanical application of the Medical-Vocational Guidelines unsupported by substantial evidence where he failed to consider whether a borderline age situation existed).

Having been born in April 1966, Plaintiff was approximately two months from her fiftieth birthday at the date of the ALJ's February 2016 decision. (T. 30, 32, 235.) She therefore falls within the period for which borderline age category considerations might apply. Pursuant to the guidance from our sister courts discussed above, the ALJ's failure to consider the borderline age situation and determine whether the higher age category[3] should have been applied under the circumstances would therefore be error meriting remand for proper consideration of the borderline age situation.

---

[3]    Had the ALJ considered Plaintiff to be an individual closely approaching advanced age based on her two-month proximity to her 50th birthday, there is a high likelihood that a finding of disability would have resulted. Medical-Vocational Guideline 201.10 indicates that an individual at that age category limited to sedentary work is disabled where she has a limited education (meaning she did not graduate high school) and a history of skilled or semi-skilled past relevant work from which there are no applicable transferable skills. *See* 20 C.F.R. Part 404, Subpart P, Appendix I, Table No. 1. The ALJ found Plaintiff had an eleventh grade education and semi-skilled, light-to-medium past relevant work. (T. 30.) The ALJ did not make a determination regarding whether Plaintiff had transferable skills from her past work, however, the ALJ limited Plaintiff to only simple, routine tasks, something which suggests Plaintiff might not be able to perform any semi-skilled work with her current impairments, regardless of the presence of transferable skills. (T. 20, 31.) Consequently, there is sufficient evidence to suggest that application of the higher age category would have likely resulted in a finding that Plaintiff was disabled as of the date of the ALJ's decision.

However, there is one additional wrinkle in the case now before this Court. The Appeals Council's notice of denial of review notes that the Appeals Council considered the borderline age issue when determining whether review was warranted and determined that "the factors in the record do not support application of the higher age category." (T. 2.) The question therefore becomes whether the Appeals Council's consideration of this issue without granting review is sufficient to remedy the ALJ's failure to assess the issue. After consideration of the relevant law related to the Appeals Council process, this Court concludes that it is not.

42 U.S.C. § 405(g) grants this Court the power to review the "final decision of the Commissioner." 42 U.S.C. § 405(g). "SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision." *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a)). The regulations note that the Appeals Council will grant review of a case where (1) there was an abuse of discretion by the ALJ; (2) there was an error of law; (3) the ALJ's findings were not supported by substantial evidence; (4) there is a broad policy or procedural issue that may affect general public interest; or (5) there is new and material evidence that renders the ALJ's decision contrary to the weight of the evidence. 20 C.F.R. § 404.970. The regulations also give the Appeals Council the power to "affirm, modify, or reverse" the ALJ's decision after granting review. 20 C.F.R. § 404.979.

Here, the Appeals Council denied the request for review, which made the ALJ's decision the final Agency decision. (T. 1-3.) The Appeals Council's statement that it found that the factors in the record did not support application of the higher age category therefore was not a part of the final Agency decision. (T. 2.) Additionally, because the Appeals Council did not

grant review in this case, they provided only a conclusory statement that "the factors in the record do not support application of the higher age category," which leaves this Court to speculate as to whether the Appeals Council in fact properly considered those factors. Where, as here, the Appeals Council implicitly acknowledged the ALJ's error in failing to consider the borderline age situation by discussing that issue in the denial of review, granting review to resolve that error would have been more appropriate, whether or not remand would ultimately be warranted. After all, it is the Appeals Council's role in the administrative appeal process to correct errors in the ALJ's decision. Had the Appeals Council granted review, they would have been required to explain their conclusion in greater detail, the decision including that discussion and those findings would have been the final Agency decision for the purposes of this Court's review, and there would have been no question as to whether the Agency considered the borderline age issue. However, because the Appeals Council instead denied review, the final Agency decision is that of the ALJ, which does not include any discussion of the borderline age situation. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("Because the Appeals Council denied review in this case, our review focuses on the ALJ's decision.")

The situation in this instance differs from a case where the Appeals Council must consider new and material evidence, since that is an issue which could not have been a part of the ALJ's decision, and the regulations specifically indicate that the Appeals Council must consider that new evidence whether or not they ultimately choose to grant review. *See* 20 C.F.R. § 404.970(b). In such situations, the Court has the ability to consider whether the Appeals Council properly considered new and material evidence even where the Appeals Council denies review because there was no way in which such issue could have been included in the ALJ's decision. *See Perez v. Chater,* 77 F.3d 41, 45 (2d Cir. 1996) ("[W]hen the Appeals Council

denies review after considering new evidence, the Secretary's final decision 'necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence.'") (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)); *Davidson v. Colvin*, No. 1:12-CV-0316, 2013 WL 5278670, at *6-7 (N.D.N.Y. Sept. 18, 2013) ("[i]f the Appeals Council fails to consider new, material evidence, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence," and concluding remand was warranted where the Appeals Council did not discuss a treating physician's opinion "or provide the type of explanation required by the treating physician rule when denying Plaintiff's request for review") (citations omitted). By contrast, where the ALJ had the opportunity and the duty to consider specific issues, it would be inconsistent with the administrative appeals structure and the definition of "final Agency decision" specified in the regulations to conclude that a statement in a denial of review by the Appeals Council such as the one made here is a finding that is binding on the parties. Consequently, the Appeals Council's statement that it considered the borderline age situation does not remedy the ALJ's error in failing to discuss that matter because the Appeals Council did not grant review and their findings were therefore not the final Agency decision that his Court is tasked with reviewing. This Court finds that the ALJ therefore committed error in failing to consider whether the higher age category would apply in the borderline age situation before him. This error is not harmless, because, as has already been discussed, there is a likelihood that applying the higher age category would have resulted in a finding of disability as of the date of the ALJ's decision.

Third, Plaintiff argues that the vocational expert's testimony does not show the existence of a significant numbers of jobs in the national economy because neither of the two jobs the vocational expert provided had numbers over 9,000 in the national economy. (Dkt. No. 11, at 24

[Pl. Mem. of Law].)  However, Defendant is correct that the ALJ only must show that significant numbers of overall jobs exist in the national economy, not, as Plaintiff now argues, that each job identified must individually constitute significant numbers.  (Dkt. No, 12, at 13-14 [Def. Mem. of Law].)  The vocational expert identified two jobs and provided the number of each of those jobs in the national economy: tube operator with 6,283 jobs and addressing clerk with 7,608 jobs. (T. 31.)  This Court has noted that a "significant number" of jobs has in practice been held to be a fairly minimal number, and has acknowledged that other courts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding.  *See Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015) (collecting cases in which the specific number of occupations in the regional and national economy provided by the vocational experts were or were not held to be a 'significant number').  Since both jobs combined showed the existence of nearly 14,000 jobs in the national economy, this Court does not agree that the ALJ failed to show significant numbers of jobs.

Fourth, and last, Plaintiff argues that the two jobs identified by the vocational expert cannot provide evidence of a significant number of jobs because a study conducted by the Agency suggests that it is doubtful those particular jobs currently exist in significant numbers in the national economy.  (Dkt. No. 11, at 24-25 [Pl. Mem. of Law].)  Plaintiff submits the results of a study from 2011 in which the outcomes of initial-level Social Security disability claims were analyzed to determine trends in findings at Steps Four and Five of the sequential evaluation. (Dkt. No. 11-1.)  In this study, the analysts noted that they found "a substantial number cases where [Disability Determination Services] cited jobs that might be obsolete," including addresser and tube operator; they further noted that "[i]t is doubtful that these jobs, as described in the [Dictionary of Occupational Titles ("DOT")], currently exist in significant numbers in our

economy." (*Id.*)  Plaintiff argues that this study provides proof that the jobs identified by the vocational expert did not constitute significant numbers in the actual setting of the current job market.  (Dkt. No. 11, at 24-25 [Pl. Mem. of Law].)

Plaintiff's argument is not persuasive, as it ignores the Agency's promulgated policies in favor of a research study.  *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (noting that "[i]n making disability determinations, we rely primarily on the DOT [] for information about the requirements of work in the national economy").  Although Plaintiff cites cases from other courts within this circuit that she claims indicate the validity of these jobs have been questioned, she fails to note that neither of the cited cases stand for the proposition she asserts; in fact, both upheld the ALJ's reliance on the vocational expert's testimony despite reservations about whether these jobs might actually be prevalent in the current national economy.  *See Gary-Bailey v. Colvin*, No. 3:14-CV-1535, 2016 WL 1323106 (D. Conn. Jan. 13, 2016); *Henry v. Colvin*, No. 12-CV-6822, 2015 WL 9238959 (S.D.N.Y. Dec. 17, 2015) (noting that while it had reservations about applying the DOT, which had last been updated 25 years prior, "the [DOT] is nevertheless an accepted basis for vocational opinion according to the Commissioner's rules").  Plaintiff does not argue that the vocational expert's testimony was contrary to the DOT, but rather that the ALJ should have concluded that the DOT was incorrect.  However, whether or not the DOT is an accurate assessment of the vocational landscape in today's world, it remains an accepted vocational resource per Social Security Administration policy.  Absent an actual inconsistency with the DOT that would render the vocational expert's testimony invalid, the ALJ was entitled to rely on the vocational expert's testimony that the identified jobs were available in the national economy.

In conclusion, although many of Plaintiff's challenges to the Step Five finding are unavailing, this Court finds that the ALJ's failure to consider whether the Medical-Vocational Guidelines should have been applied in a non-mechanical fashion due to Plaintiff's borderline age situation is harmful error, as there is a significant likelihood that non-mechanical application would have resulted in a finding of disability as of the date of the ALJ' decision. On remand, since by this point Plaintiff has in fact attained the age of 50, the ALJ should consider the factors related to applying the Medical-Vocational Rules for an individual closely approaching advanced age who is limited to sedentary work, considering in particular whether Plaintiff had any transferable skills from her past relevant work.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 11, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge